**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **Civil Action No. 3:23-CV-1025** |
| **v.** | |
| **DANIEL E. LEVIN,** | |
| **Defendant.** | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), files this Complaint against Defendant Daniel E. Levin ("Levin" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.     A cornerstone of our system of broker-dealer regulation is the requirement that persons engaging in the business of effecting securities transactions for others be registered. Levin violated this requirement by soliciting over $2.6 million from at least 27 investors from 2017 through 2018, without being registered.[1]  This conduct brought Levin within the statutory definition of a broker.  As a result, Levin was required to register with the Commission under Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act").

---

[1] On April 18, 2022, the Commission entered into the first of a series of three tolling agreements with Levin, preserving conduct going back to April 18, 2017.

2.      Despite not having a brokerage license, Levin solicited investors, primarily in

Texas, to purchase units of the CRP Automotive Portfolio, LP (the "CRP Fund"), which Levin

established through another entity he controlled, Comprehensive Retirement Planning, LLC

("CRP LLC").  The CRP Fund then invested investor funds in a separate funds controlled by a

New York-based alternative asset management firm, GPB Capital, Inc. ("GPB Capital").[2]

Accordingly, Levin, who received at least $320,000 in transaction-based compensation, should

be enjoined from further violations of Section 15(a) of the Exchange Act; ordered to disgorge all

ill-gotten gains plus prejudgment interest; and pay a civil monetary penalty.

## VIOLATIONS

3.      By virtue of the conduct alleged herein, Levin has engaged in acts, practices,

transactions and courses of business that constitute violations of Section 15(a) of the Exchange

Act, 15 U.S.C. § 78o(a).

4.      Unless Levin is restrained and enjoined, he will engage in the acts, practices,

transactions, and courses of business set forth in this Complaint or in acts, practices, transactions,

and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

5.      The Commission brings this action pursuant to the authority conferred upon it by

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

6.      The Commission seeks a final judgment: (a) permanently enjoining Defendant

from violating the federal securities laws this Complaint alleges they have violated; (b) ordering

Defendant to disgorge his ill-gotten gains and to pay prejudgment interest thereon pursuant to

---

[2]     On February 4, 2021, the Commission charged GPB Capital, along with several of its
senior officers, with running a fraudulent Ponzi-like investment scheme.

Sections 21(d) (5) and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and (7)]; (c) ordering the Defendant to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

8.      Defendant, directly and indirectly, made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

9.      Venue lies in this District under Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Northern District of Texas.  Defendant resides in the District, and communicated with and received funds from investors located in this District.

## DEFENDANT

10.      Levin, age 66, is a natural person, and a resident of Dallas, Texas.  At all relevant times, Levin controlled CRP LLC and the CRP Fund.

11.      Levin has not been associated with a broker or dealer since 2014.  From approximately 1980 through 2014 Levin was a registered representative associated with numerous broker-dealers.  Levin previously held multiple securities licenses, including the Series 7, 63, and 65 licenses.

12.     On at least four prior occasions, Levin was disciplined by the Commission and by the Financial Industry Regulatory Authority ("FINRA")[3] for improper sales practices and other violations.

13.     CRP LLC was a Texas limited liability company formed by Levin with its principal place of business in Dallas, Texas.  Levin was the registered agent and sole managing member. CRP LLC was not registered with the Commission in any capacity.  Its current filing status is "forfeited existence."

14.     The CRP Fund is a Texas limited partnership with its principal place of business in Dallas, Texas, and was owned and controlled solely by Levin.  The CRP Fund is not registered with the Commission in any capacity.

## FACTUAL ALLEGATIONS

15.     As a formerly registered person, Levin has had years of experience in the brokerage industry, selling securities to retail customers, from approximately 1980 to 2014.

16.     In late 2016, Levin decided to sell units of private placements being offered by GPB Capital.  In early 2017, GPB Capital agreed to allow Levin to sell up to $6 million in its funds up to a maximum of 99 investors in the CRP Fund.  In or about March 2017, Levin drafted the CRP Fund's Private Placement Memorandum ("PPM"), and sent it directly to investors and potential investors.

17.     From at least April 2017 through August 2018 (the "relevant period"), Levin sold units of CRP Fund to at least 27 investors.

---

[3] FINRA is a membership based organization that creates and enforces rules for members based on the federal securities laws, including handling the licensing and regulation of broker-dealers.  The Commission oversees FINRA.

18.     Levin held himself out in CRP Fund's PPM as an experienced financial professional that identified and sold alternative investment opportunities to investors.

19.     At no point during the relevant period was Levin registered with the Commission or an associated person of a registered entity in any capacity.

20.     At Levin's direction, the CRP Fund used investor funds to invest in certain of Invest Firm 1's funds.  At Levin's direction, the CRP Fund issued PPMs to investors outlining the terms of the investments.

21.     Levin was the sole individual soliciting investors, and he often personally delivered the CRP Fund's PPM to investors and potential investors at their homes and offices. Levin advised investors as to the merits of the investment.  For example, Levin told investors that assets underlying the investment were bought at discount, would increase in value, and would potentially be sold to a large conglomerate for a much higher price.   Levin personally solicited 50 to 75 individuals to invest in the CRP Fund.

22.     Levin actively engaged in broker activity by cold-calling potential investors; tracking solicitations and investments; sending and receiving subscription agreements from investors; drafting and using investor presentations; and directly handling investor funds.

23.     Levin received transaction-based compensation for the sale of interests in the CRP Fund.  Levin received commissions and fees which were disclosed in the CRP Fund's PPM. Specifically, Levin received 6% of each investment in the CRP Fund, which in addition to other disclosed fees, resulted in at least $320,000 in transaction-based compensation during the relevant period.  Levin received the sales commissions via checks he wrote to himself from CRP LLC's bank account.

24.     Throughout the relevant period, Levin was directly involved in handling customers' funds and securities.  After a customer decided to invest, Levin regularly picked up the customers' checks to fund the investment in CRP Fund, and deposited these checks in CRP LLC's bank account, which Levin controlled.  On a weekly or monthly basis, Levin sent the investors' money to the GPB Capital's funds, as an investment in GPB Capital's funds on behalf of CRP Fund (less the 6% commissions).

25.     Further, at various times during the relevant period, Levin also directly handled the dividend payments from GPB Capital's funds.  At monthly intervals during the relevant period, GPB Capital's funds sent dividend payments to CRP LLC.  Levin directly distributed these dividend payments to CRP Fund investors.  Levin was solely responsible for handling investor funds and investment-related documents for all CRP Fund investors.

## CLAIM FOR RELIEF

### Violations of Section 15(a) of the Exchange Act

26.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 25.

27.      By engaging in the conduct alleged above, Levin acted as a broker within the meaning of Section 3(a)(4) of the Exchange Act [15 U.S.C. § 78c(4)].

28.     Levin, while engaged in the business of effecting transactions in securities for the account of others, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered with, or an associated person of a firm registered with, the SEC in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

29.     Levin violated, and unless restrained and enjoined will continue to violate,

Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)];

### II.

Ordering Defendant to disgorge all ill-gotten gains he received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Section 21(d)(5) and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and (7)];

### III.

Ordering Defendant to pay civil monetary penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

### IV.

Granting any other and further relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action issues so triable.

Dated: May 9, 2023          Respectfully submitted,

_s/ Jason J. Rose_

Jason J. Rose
Texas Bar No. 240007946

U.S. Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882
(817) 978-1408 (jr)
(817) 978-4927 (fax)
RoseJ@sec.gov

David Stoelting*
New York Bar No. 2493179
Lindsay Moilanen*
New York Bar No. 4817292
Shannon Keyes*
Massachusetts Bar No. 651959

U.S. Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-0174 (Stoelting)
(212) 336-1319 (fax)
StoeltingD@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
*Pending admission _pro hac vice_.