UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    *Plaintiff*,<br><br>v.<br><br>DANIEL E. LEVIN,<br><br>    *Defendant*. | §<br>§<br>§<br>§<br>§   Civil Action No. 3: 23-CV-01025-X<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR MONETARY REMEDIES AND A FINAL JUDGMENT AGAINST DEFENDANT DANIEL E. LEVIN**

Dated: March 1, 2024

Respectfully submitted,

s/ *David Stoelting*

_____
David Stoelting*
New York Bar No. 2493179
Shannon Keyes*
Massachusetts Bar No. 651959
U.S. Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-0174 (Stoelting)
(212) 336-1319 (fax)
StoeltingD@sec.gov
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
*Admitted pro hac vice.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    Levin's Unsupported Inability-to-Pay Argument Should Be Given No Weight ........... 2

    II.   Levin's Unsupported Arguments Regarding His Intent Have No Merit ....................... 5

CONCLUSION ....................................................................................................................... 7

TABLE OF AUTHORITIES

**Cases**

*Liu v. SEC*, 140 S. Ct. 1936 (2020)..................................................................................................2
*SEC v. Almagarby*, -- F.4th --, 2024 WL 618517 (11th Cir. Feb. 14, 2024) ...................................6
*SEC v. Cavanagh*, 2004 WL 1594818 (S.D.N.Y. July 16, 2004).....................................................6
*SEC v. Friendly Power Co.*, 49 F. Supp. 2d 1363 (S.D. Fla. 1999) ............................................6, 7
*SEC v. GenAudio Inc.*, 32 F.4th 902 (10th Cir. 2022) ....................................................................5
*SEC v. Huffman,* 53 F.3d 1280 (5th Cir. 1995)................................................................................3
*SEC v. Kahlon,* 873 F.3d 500 (5th Cir. 2017)...................................................................................6
*SEC v. Merchant Capital, LLC*, 2009 WL 294751 (11th Cir. Feb. 9, 2009) ..................................6
*SEC v. Rabinovich*, 2008 WL 4937360 (S.D.N.Y. Nov. 18, 2008)..................................................6
*SEC v. Rockwell Energy of Texas*, *LLC,* 2012 WL 360191 (S.D. Tex. Feb. 1, 2012).....................2
*SEC v. Sample*, 2017 WL 5569873 (N.D. Tex. Nov. 20, 2017) ..................................................2, 3
*SEC v. Snyder*, 2006 WL 6508273 (S.D. Tex. Aug. 22, 2006) .......................................................2
*SEC v. Stack*, 2023 WL 1325495 (W.D. Tex. Jan. 31, 2023)..................................................3, 4, 5
*SEC v. United Energy Partners, Inc.*, 88 F. App'x 744 (5th Cir. 2004).........................................2
*SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008) ...................................................................5
*United States v. Hagen*, 542 F. Supp. 3d 515 (N.D.Tex. 2021).......................................................6

**Statutes**

15 U.S.C. § 78u(d)(3)(B)(i) ........................................................................................................2 n.1

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this reply memorandum of law in further support of its motion for monetary remedies and for entry of a Final Judgment as to Defendant Daniel E. Levin ("Levin"). For the additional reasons set forth below and in the accompanying Reply Declaration of Shannon Keyes ("Keyes Reply Decl.") and the exhibits thereto, the Court should grant the SEC's motion.

## PRELIMINARY STATEMENT

Levin's unlawful sales of securities without being registered as a broker caused substantial losses for his customers, who ended up buying investments from Levin that turned out to be fraudulent. The parties agreed in their bifurcated consent judgment (Dkt. No. 23) that the court "shall" order Levin to pay disgorgement, prejudgment interest (from an agreed-upon date), and a civil penalty. The SEC's moving brief shows that Levin obtained $320,000 in ill-gotten gains—commissions from his unlawful securities sales—that the Court should order Levin to disgorge to the SEC for the benefit of Levin's victims and that the resulting amount of prejudgment interest Levin should be ordered to pay totals $65,538.16. The moving brief further explains why it is appropriate for the Court to order Levin to pay a civil penalty of $115,231, based on both the conduct the parties agreed the Court would "accept[ ] and deem[ ] true" for purposes of the SEC's motion and other evidence.

In his letter opposition (emailed to the SEC on February 20, 2024, Dkt. No. 30-1, "Letter"), Levin does not contest the SEC's disgorgement or prejudgment interest calculations. Instead, Levin offers two arguments against the imposition of monetary relief. First, he claims he has "no money," though his bank account statements belie that claim. Second, he claims that he did not intend to violate the securities laws, though he offers no evidence to support that argument other than his Letter's self-serving, unsworn assertions. Levin's unsubstantiated claims

warrant no reduction in the amount of disgorgement, prejudgment interest, or penalties the Court should order Levin should pay. The SEC's motion for monetary remedies and for entry of a Final Judgment should therefore be granted.[1]

## ARGUMENT

### I. Levin's Unsupported Inability-to-Pay Argument Should Be Given No Weight.

"[W]hile it is within a court's discretion to consider inability to pay, such a finding is irrelevant to disgorgement liability. As another court in this Circuit has noted, 'a defendant should not be permitted to avoid disgorgement by claiming a lack of funds.'" *SEC v. Rockwell Energy of Texas, LLC,* No. 09-cv-4080, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012) (quoting *SEC v. Snyder*, No. 03-cv-4658, 2006 WL 6508273, at *9 (S.D. Tex. Aug. 22, 2006)); *see also SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 745 (5th Cir. 2004) (stating that "inability to pay is irrelevant" as to disgorgement and affirming district court's disgorgement order), *overruled on other grounds*, *Liu v. SEC*, 140 S. Ct. 1936, 1949-50 (2020).

Regarding the civil penalty determination, one of the five factors to be considered is "whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." Dkt. No. 27 at 19. To justify such a reduction, "a defendant must establish inability to pay by a preponderance of the evidence." *SEC v. Sample*, No 14-cv-1218-B, 2017 WL 5569873, at *4 (N.D. Tex. Nov. 20, 2017). "[A] party claiming an inability to pay does not

---

[1] The SEC respectfully corrects two typographical errors in its moving brief filed on January 26, 2024, Dkt. No. 27. First, at page 14, Dkt. No. 27 at 18, the brief incorrectly lists the maximum inflation-adjusted civil penalty for each first-tier violation, pursuant to 15 U.S.C. § 78u(d)(3)(B)(i), as $111,524 (or the defendant's gross pecuniary gain). The correct amount is $11,524. *See* SEC Release No. 6521, Adjustments to Civil Monetary Penalty Amounts, 2024 WL 111023, at *2 (Jan. 5, 2024). Second, the brief seeks a second-tier civil penalty of $115,231, Dkt. No. 27 at 6, 18, 20, 21, but contains a typographical error on page 15, which should contain the same figure. *Id.* at 19 ("Here, the statute and the relevant factors support the imposition of a second-tier penalty of $151,231.").

establish it simply by bald, conclusory assertions." *SEC v. Huffman*, 53 F.3d 1280, at *2 (5th Cir. 1995) (unpublished opinion) (affirming district court's finding that defendant's testimony, three financial statements, and individual and corporate tax returns were not sufficient to establish inability to pay); *SEC v. Stack*, No. 21-cv-51-ly, 2023 WL 1325495, at *11 (W.D. Tex. Jan. 31, 2023) (rejecting defendant's claim that "he has no assets and cannot afford to pay any penalty").

Here, Levin's evidentiary showing is inadequate. He has provided no personal or LLC tax returns, no sworn financial statements, no other statements under penalty of perjury, no balance sheets, and no disclosure of any source of income apart from an individual retirement account ("IRA"). The only evidence he has provided, other than the unsupported assertions in his unsworn Letter, are account statements from Neighborhood Credit Union ("NCU").[2] These records do not support his inability-to-pay claim; in fact, they contradict much of his claim.

Levin states that he has told the SEC he has "no money" and is "living basically month-to-month by taking money out of [his] IRA." Letter at 1. In fact, the NCU records through October 2023 show that Levin received deposits of commissions totaling $76,945.28 from financial firms that appear to offer retirement annuities: Ibexis Life & Annuity Company, F&G Annuities & Life, and Accordia Life and Annuity Company.[3] Ex. 18.[4] And his receipt of these

---

[2] Levin's inability-to-pay argument largely relies on the NCU account, where he states his personal funds are kept, rather than the account at Veritex Community Bank ("Veritex"), where he deposited investor funds.

[3] *See* https://ibexis.com/ (last visited Feb. 27, 2023); https://www.fglife.com/ (last visited Feb. 29, 2024). Based on a public web site, Accordia Life and Annuity Company appears to be a subsidiary of Global Atlantic Financial Group. *See* https://www.globalatlantic.com/ (last visited Feb. 29, 2024).

[4] "Ex." refers to Exhibits 17, 18, 19 or 20 attached to the Keyes Reply Decl. and numbered sequentially to follow the sixteen exhibits attached to the SEC's Appendix filed on January 26, 2024. Dkt. No. 28.

commissions also undermines Levin's implication that his IRA account was his only source of income. These commissions, apparently derived from his sale of annuities, appear to support the conclusion—based on a public website featuring photos of Levin and solicitations for retirement advice, *see* Ex. 20—that Levin does have sources of income he has not disclosed. *See* https://www.investmenttalk.net/note-from-the-founder (last visited Feb. 27, 2024).[5]

Levin also claims that due to his withdrawals he has "dwindled down [his] IRA to virtually nothing" and that "every month after paying [his] bills, [his] Neighborhood Credit Union account is probably down to under $5000." Letter at 1. These assertions are contradicted by the NCU bank records. Although Levin withdrew funds monthly from his IRA account, his IRA balance was $17,022.91 as of October 31, 2023, while his checking account balance was $12,329.24 as of October 31, 2023 (the last period for which the SEC has records for these accounts). Ex. 19.

In any event, the NCU records are far from sufficient to establish an inability to pay. Levin has submitted no other documents critical to assessing his inability-to-pay claim, such as tax returns or sworn financial statements. In *Stack*, for example, a defendant claiming an inability to pay a penalty submitted his tax returns from 2020 and 2021 showing an income of less than $14,000, a bank statement showing a negative balance of $77.78, a child support bill showing more than $32,000 owed, and a declaration affirming that the defendant planned to sell the home he had been renovating. 2023 WL 1325495, at *11. The court found that the defendant "fail[ed] to state how much the house is worth or whether he owns any other

---

[5] The SEC first became aware of Levin's www.investmenttalk.net website from the domain name of his email sent on February 20, 2024. *See* Keyes Reply Decl. ¶ 9, Ex. 20.

property," and as a result "failed to carry his burden to establish an inability to pay by a preponderance of the evidence." *Id*.

Finally, "an inability to pay is only one factor to be considered in imposing a penalty and 'should not be deemed categorically and uniformly the determinative one in the analysis.'" *Id.* (citing *SEC v. GenAudio Inc.*, 32 F.4th 902, 955 (10th Cir. 2022); *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008)). As Levin's conduct was egregious, recurring, and led to financial harm to his clients, *see* Dkt. No. 27 at 19-20, Levin's ability-to-pay arguments should be given no weight. The Court should impose a second-tier penalty of $115,231 on Levin, as the SEC requests.

## II. Levin's Unsupported Arguments Regarding His Intent Have No Merit.

Levin asserts that he "never thought [he] was doing anything wrong or illegal" and that he would not have "done this investment . . . if [he] knew that it was against the law." Letter at 2. Levin further claims that he learned about the GPB investment "from a woman who [was] without a series 7 [license to act as a securities broker] . . . [and who] received instruction on how to create this investment from an attorney," that he contacted another attorney "who had a lot of experience in creating LLCs," and that this second attorney told Levin that he was "creating it the correct way." Letter at 1. Levin also says he received "very bad legal opinions" from these unnamed attorneys and that he "[has] to blame [him]self for excepting [*sic*] their recommendations." *Id.*

Levin offers no evidence to support these claims: no declarations from these attorneys, no written communications between him and these attorneys, no retainer agreements or legal bills, and not even a sworn declaration from himself. Nor does Levin even claim that he sought or received legal advice on whether soliciting investments in GPB and receiving transaction-based

compensation was appropriate. *See, e.g., SEC v. Rabinovich*, No. 07 Civ. 10547, 2008 WL 4937360, at *5 (S.D.N.Y. Nov. 18, 2008) ("Among the activities indicative of being a broker are soliciting investors, participating in the securities business with some degree of regularity, and receiving transaction-based compensation, as opposed to a salary."). Levin also falls far short of alleging an advice-of-counsel defense, which requires Levin to show that: (1) the advice was sought and received before his violative conduct; (2) he sought legal advice in good faith and for the purpose of determining whether his conduct was lawful; (3) the lawyer was informed of all material facts which Levin knew; and (4) Levin followed the advice he was given. *See United States v. Hagen*, v. 542 F. Supp. 3d 515, 518 (N.D. Tex. 2021).

Even if Levin had provided evidence that he sought, obtained, and followed legal advice on this issue and therefore believed his conduct was legal—which he has not—such evidence would be irrelevant as to whether he violated Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"). "[S]ection 15(a) of the Exchange Act does not contain a scienter element." *SEC v. Almagarby*, -- F.4th --, 2024 WL 618517, at *10 (11th Cir. Feb. 14, 2024); *see also SEC v. Merchant Capital, LLC*, No. 08-14551, 2009 WL 294751, at *2 (11th Cir. Feb. 9, 2009) (Section 15(a) violations are "strict-liability violations"). Therefore, any purported reliance on the advice of counsel is irrelevant to Levin's liability under Section 15(a). *See SEC v. Kahlon,* 873 F.3d 500, 507 (5th Cir. 2017) ("[N]either a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense[.]" (cleaned up)) (affirming summary judgment for SEC against defendants for non-scienter charges of unregistered sales of securities); *SEC v. Cavanagh*, No. 98 Civ. 1818-DLC, 2004 WL 1594818, at *19 (S.D.N.Y. July 16, 2004) (a defendant's "assertion of [counsel's] advice does not raise a question of fact requiring a trial" because the claim against him was a strict liability

claim); *SEC v. Friendly Power Co.*, 49 F. Supp. 2d 1363, 1367-68 (S.D. Fla. 1999) ("neither a good faith belief that the offer or sales in question were legal, nor reliance on advice of counsel, provides a complete defense to a charge of violating" a provision that required proof of neither negligence nor scienter).[6]

Indeed, as demonstrated in the SEC's moving brief, Levin's conduct was egregious, led to substantial losses by his clients, and was not an isolated event but took place over years. Dkt. No. 27 at 19-20. Moreover, Levin—a recidivist with a prior disciplinary history, *see* Dkt. No. 27 at 9-10—may be continuing to solicit clients even with this action pending based on his website, https://www.investmenttalk.net/note-from-the-founder (last visited Feb. 27, 2024). A second-tier penalty is therefore appropriate to deter Levin from violating the securities laws again.

## CONCLUSION

For these reasons, the SEC respectfully requests that the Court enter the proposed Final Judgment and order Levin to pay disgorgement of $320,000, plus prejudgment interest of $65,538.16, and a civil penalty of $115,231.

---

[6] At best, any such evidence would be relevant to the egregiousness of Levin's conduct or to the degree of his scienter, two of the five factors courts in this District consider to determine the appropriateness and amount of a civil penalty. *See* Dkt. No. 27 at 19.

7

Dated: March 1, 2024　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ *David Stoelting*

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　David Stoelting*
　　　　　　　　　　　　　　　　　New York Bar No. 2493179
　　　　　　　　　　　　　　　　　Shannon Keyes*
　　　　　　　　　　　　　　　　　Massachusetts Bar No. 651959
　　　　　　　　　　　　　　　　　U.S. Securities and Exchange Commission
　　　　　　　　　　　　　　　　　New York Regional Office
　　　　　　　　　　　　　　　　　100 Pearl Street, Suite 20-100
　　　　　　　　　　　　　　　　　New York, New York 10004-2616
　　　　　　　　　　　　　　　　　(212) 336-0174 (Stoelting)
　　　　　　　　　　　　　　　　　(212) 336-1319 (fax)
　　　　　　　　　　　　　　　　　StoeltingD@sec.gov
　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　*Admitted *pro hac vice*

CERTIFICATE OF SERVICE

      I certify that on March 1, 2024, I electronically filed the foregoing document, as well as the Declaration of Shannon Keyes and Exhibits 17-20 thereto with the
Clerk of the Court for the Northern District of Texas, Dallas Division, using the CM/ECF system.

      I further certify that on March 1, 2024, I served a true and correct copy of the foregoing documents by email to Defendant Daniel E. Levin, who is a non-ECF participant, pursuant to the agreement of the parties that service of filings can be made by email.

                                      /s/ David Stoelting
                                      David Stoelting